IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRIAN M. KNOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 14-00287-CG-M |
| ) | |
| GREDE II, LLC, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter is before the Court on the Motion for Summary Judgment (Doc. 32), Brief in Support (Doc. 33), and Evidentiary Submission in Support (Doc. 34) filed by Grede II, LLC ("Defendant"), the Motion for Summary Judgment in Opposition (Doc. 37) filed by Brian M. Knott ("Plaintiff"), Defendant's reply (Doc. 39), and Defendant's Motion to Strike (Doc. 38). For the reasons set forth herein, Defendant's motion for summary judgment is due to be **GRANTED**, Plaintiff's motion for summary judgment is due to be **DENIED**, and Defendant's motion to strike is due to be **DENIED AS MOOT**.

### I. BACKGROUND

Plaintiff, an African American male, was employed as an "NDT operator" by Defendant, "a cast iron foundry and machine operations facility." (Doc. 34-1, p. 14; Doc. 33, p. 2). Plaintiff's daughter had oral surgery in late April or early May of 2012. (Doc. 1-1, pp. 5-6; Doc. 34-1, pp. 26-27; Doc. 34-5, pp. 3-4). The daughter's physician certified to Defendant that Plaintiff would need time off to care for his

daughter from April 30th to May 9th, with no recurring flare-ups of her condition expected. (Doc. 1-1, pp. 6-7; Doc. 34-5, pp. 4-5). Plaintiff claims that the certification was faxed directly to Defendant from the physician and that he was never informed of its contents. (Doc. 34-1, pp. 25, 27). Defendant alleges that Plaintiff had numerous attendance issues during his employment and tried to improperly claim several instances after his daughter's surgery as FMLA leave. (Doc. 33, pp. 7-16). Plaintiff contends that during this time period he was passed over for promotion to a grinder position. (Doc. 34-1, p. 17). He claims he wanted the position because of its accompanying work schedule, which would "reduce the amount of FMLA call-ins." (Doc. 1-1, p. 14). Upon receiving a tardy that exceeded the allowable amount under Defendant's attendance policy, Plaintiff was terminated. (Doc. 34-1, p. 23).

Plaintiff filed charges with a handful of federal and state administrative agencies, including the United States Equal Employment Opportunity Commission, to no avail. (Doc. 1; Doc. 37). Plaintiff subsequently filed this lawsuit against Defendant. After sifting through Plaintiff's muddled complaint and assorted attached documents, the Court deduces that Plaintiff has two claims: racial discrimination under Title VII of the Civil Rights Act of 1964 and wrongful termination under the Family and Medical Leave Act.

## II. ANALYSIS

### A. The Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) instructs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." The trial court's mission is to "determine whether there is a genuine issue for trial" and not to "weigh the evidence." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The burden is on the moving party to show that there is no genuine dispute as to any material fact. Id. at 256. In conducting its summary judgment analysis, the Court must construe all evidence "in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

After the movant meets its burden, the burden shifts to the nonmoving party "to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the nonmoving party fails to do so, the "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Further, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted). There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### B. Pro Se Litigants

The pro se litigant's road to trial is fraught with peril. Ever mindful of the

difficulties that pro se litigants face, a trial court will hold pro se pleadings "to a less stringent standard than pleadings drafted by attorneys." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). The court will therefore "liberally construe" the pro se pleadings. Fernandez v. United States, 941 F.2d 1488, 1491 (11th Cir. 1991). Despite this leniency, pro se litigants must "conform to procedural rules." Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002). A pro se litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989). The Local Rules of this Court set out the following: "All persons proceeding pro se shall be bound by, and must comply with, all Local Rules of this Court, as well as the Federal Rules of Civil and Criminal Procedure, unless excused by Court order." Gen. Local R. 83.5(a). The Supreme Court has recognized that the "rules of procedure are based on the assumption that litigation is normally conducted by lawyers," stating that the Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." McNeil v. United States, 508 U.S. 106, 113 (1993). Pro se litigants proceed at their own risk.

### C. Title VII of the Civil Rights Act of 1964

Title VII prohibits employers from discriminating against employees based on race. See 42 U.S.C. § 2000e-2 (2012). If an employee fails to alert a court to direct evidence of discrimination, as is the case here, the claim must be analyzed under the McDonnell Douglas framework, provided by the Supreme Court in McDonnell

4

Douglas Corp. v. Green, 411 U.S. 792 (1973), and Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). The employee must first "make out a prima facie case of discrimination." See Flowers v. Troup Cnty., Ga., Sch. Dist., 803 F.3d 1327, 1336 (11th Cir. 2015). If the employee succeeds, the burden shifts to the employer to provide a nondiscriminatory reason for the adverse employment action. Id. If the employer does so, the parties will then "litigate whether the employer's proffered reason for its action is pretext." Id.

It appears that Defendant focuses on Plaintiff's termination as giving rise to the Title VII claim. For discrimination by termination, the employee must first make out a prima facie case by showing "(1) that he is a member of a protected racial class, (2) that he was qualified for the position, (3) that he experienced an adverse employment action, and (4) that he was replaced by someone outside of his protected class or received less favorable treatment than a similarly situated person outside of his protected class." Id. The Court agrees with Defendant that Plaintiff's termination was not Title VII discrimination. Plaintiff admitted that he was unaware of any person outside his protected class who was treated more favorably. (Doc. 34-1, p. 40). Further, Plaintiff admitted in his deposition that he has no evidence that he was fired because of his race. Id. at 39-40. In fact, Plaintiff stated, "You know, really my complaint is they fired me for tardies." Id. at 40. Also, the human resources manager of Defendant at the time of Plaintiff's termination swore in an affidavit that Plaintiff was fired because of attendance policy violations and not because of race. (Doc. 34-2, p. 11). Plaintiff has failed to show a prima facie case

5

of discrimination based on his termination, and Defendant is therefore entitled to summary judgment.

Although Defendant interpreted Plaintiff's poorly written complaint as charging discrimination for his termination, the complaint appears to associate discrimination with his being passed over for a promotion instead. (Doc. 1, pp. 1-2). For failure to promote, the employee must make out a prima facie case of discrimination by showing "(1) that the plaintiff belongs to a protected class; (2) that she applied for and was qualified for a promotion; (3) that she was rejected despite her qualifications; and (4) that other equally or less-qualified employees outside her class were promoted." Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1174 (11th Cir. 2010). "Promotion" is defined as "[t]he act of promoting someone to a higher job, grade, or rank, or the fact of being so promoted." The American Heritage Dictionary of the English Language 1410 (5th ed. 2011). Plaintiff admitted in his deposition that the grinder position he was allegedly passed over for did not receive more in salary or benefits and was not considered a promotion. (Doc. 34-1, p. 19). Plaintiff's claim is really for denial of transfer. Plaintiff did not apply for the position. Id. at 18. Rather, he claims that he was tricked into not applying, although he provides no evidence other than mere speculation. Id. at 17-18, 40. Even assuming that is the truth, the constructive denial of transfer did not result "in a serious and material change in the terms, conditions, and privileges of employment," and Plaintiff's "wages, benefits, or rank were not affected." See Webb-Edwards v. Orange Cnty. Sheriff's Office, 525 F.3d 1013, 1032-33 (11th Cir. 2008); see also Harrison v. Int'l

6

Bus. Machs. (IBM) Corp., 378 F. App'x 950, 954 (11th Cir. 2010) (unpublished). Thus, Plaintiff has not suffered an adverse employment action based on his failure to transfer positions. Plaintiff's prima facie case of discrimination based on denial of transfer fails, and Defendant is entitled to summary judgment.

### D. Family and Medical Leave Act

The Family and Medical Leave Act ("FMLA") provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1) (2012). The Act defines "[s]erious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." Id. § 2611(11).

The Act allows leave to "be taken intermittently or on a reduced leave schedule when medically necessary." Id. § 2612(b)(1). The employee is required to provide the employer with notice in advance when the leave is foreseeable. Id. § 2612(e)(2). When the leave is not foreseeable, "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a) (2015). The notice must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." Id. § 825.303(b). The notice "must explain the reasons for the needed leave so as to allow the employer to determine whether the leave qualifies

under the Act." Id. § 825.301(b). Otherwise, the employee risks having the leave request denied. Id. An employer may require "certification issued by the health care provider of the eligible employee or of the son, daughter, spouse, or parent of the employee . . . as appropriate. The employee shall provide, in a timely manner, a copy of such certification to the employer." 29 U.S.C. § 2613(a) (2012). The certification must state:

> (1) the date on which the serious health condition commenced;
>
> (2) the probable duration of the condition;
>
> (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition;
>
> (4)(A) for purposes of leave [to care for a family member], a statement that the eligible employee is needed to care for the son, daughter, spouse, or parent and an estimate of the amount of time that such employee is needed to care for the son, daughter, spouse, or parent; and
>
> . . .
>
> (7) in the case of certification for intermittent leave, or leave on a reduced leave schedule, [to care for a family member], a statement that the employee's intermittent leave or leave on a reduced leave schedule is necessary for the care of the son, daughter, parent, or spouse who has a serious health condition, or will assist in their recovery, and the expected duration and schedule of the intermittent leave or reduced leave schedule.

Id. § 2613(b).

The FMLA provides for two causes of action for violations of the Act: interference claims and retaliation claims. See Strickland v. Water Works & Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001). For interference, the Act states, "It shall be unlawful for any employer to interfere with,

8

restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1) (2012). For retaliation, the Act states, "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." Id. § 2615(a)(2). The Code of Federal Regulations sheds some more light on violations of the FMLA:

> The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. <u>By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies.</u>

29 C.F.R. § 825.220(c) (2015) (emphasis added). It is unclear whether Plaintiff is asserting claims of interference, retaliation, or both, so each will be analyzed.

### 1. Interference

Interference requires an employee to show "that he was entitled to a benefit under the FMLA and was denied that benefit." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1247 (11th Cir. 2015).

In order to determine whether Defendant interfered with Plaintiff's FMLA rights, it is necessary to characterize Plaintiff's attendance during the relevant period leading up to his dismissal. The attendance policy in effect at the time of Plaintiff's termination tracked absences and the times when employees arrived late or left early, colloquially referred to as "tardies" and "leave earlies," respectively.

The policy allowed for a maximum of four unexcused absences, twenty-one unexcused and excused absences in total, six tardies, and six leave earlies in a twelve-month period. (Doc. 34-4, p. 5). The total number of each category was calculated on a rolling basis. Id. Upon reaching the maximum limit of any particular category, the employee was reviewed for discharge. Id. Plaintiff was terminated on February 22, 2013, so the relevant time period is from February 23, 2012, to the date of termination. In that time, a tally of the absence reports reveals that Plaintiff accumulated five tardies (including the tardy on which his termination was based), seven excused absences, four certified FMLA absences, one unexcused absence, four personal days, fourteen absences Plaintiff claimed under the FMLA, thirteen tardies Plaintiff claimed under the FMLA, and zero leave earlies. (Doc. 34-2, pp. 8-10; Doc. 34-7, pp. 56-95).

The total of five non-FMLA-related tardies contradicts Defendant's assertion that Plaintiff was fired for accumulating six tardies in violation of the attendance policy. The absence reports indicate that Plaintiff received non-FMLA-related tardies on March 1, 2012, May 21, 2012, September 12, 2012, December 10, 2012, and February 21, 2013. However, a meeting was held on September 25, 2012, where Defendant informed Plaintiff that he had four tardies in his file at that time, instead of the three revealed by the absence reports. (Doc. 34-8, p. 4). Plaintiff confirmed this in his deposition, although he argued that he was given the four tardies for FMLA-covered leave. (Doc. 34-1, pp. 25-26). It is unclear when Plaintiff received the fourth tardy, and it is possible that he was given a tardy for one of the

instances he was late for work in which he claimed coverage by the FMLA. Plaintiff was also issued a written warning that he had accumulated five tardies on December 13, 2012, which Plaintiff admitted in his deposition. (Doc. 34-6, p. 9; Doc. 34-1, pp. 30-31). Plaintiff admitted that he was fired upon receiving his final tardy due to car trouble. (Doc. 34-1, p. 23).

Even if the extra tardy was assessed to Plaintiff based on one of the instances when he purported to use FMLA leave, Defendant's termination of Plaintiff did not violate the FMLA. The certification for FMLA leave that Plaintiff obtained from his daughter's physician lists the period of leave from April 30, 2012, to May 9, 2012. (Doc. 1-1, p. 6; Doc. 34-5, p. 4). The certification indicates that the physician did not anticipate any "episodic flare-ups periodically preventing the patient from participating in normal daily activities" and that the daughter would not "require care on an intermittent or reduced schedule basis." (Doc. 1-1, pp. 6-7; Doc. 34-5, pp. 4-5). Plaintiff also admitted in his deposition that he never requested that his daughter's doctor inform Defendant that Plaintiff needed more time off for his daughter. (Doc. 34-1, p. 28). In fact, Plaintiff admitted that he has not taken his daughter to see any physician about her condition since her surgery. Id. at 27. Plaintiff claims that his daughter regularly experiences pain from the operation, but he just gives her medication to ease her pain. Id. at 27-28. However, "activities that can be initiated without a visit to a health care provider [are insufficient] to constitute a regimen of continuing treatment for purposes of FMLA leave." 29 C.F.R. § 825.113(c) (2015). The uncontroverted evidence shows that the treatment

11

ended approximately on May 9, 2012, well before the onslaught of absences and tardies that were claimed by Plaintiff to be covered by the FMLA. (Doc. 1-1, p. 6; Doc. 34-5, p. 4). There is no indication that Plaintiff's daughter suffered from the statutorily-defined "serious health condition" on the days he claims under the FMLA. Plaintiff has not shown by a preponderance of the evidence that he was entitled to FMLA leave beyond the days covered by the physician's certification. Thus, Defendant is due to be granted summary judgment on the interference claim.

## 2. Retaliation

Retaliation requires the employee to "demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." Strickland, 239 F.3d at 1207. If the employee lacks direct evidence that the employer intentionally retaliated against him, as is the case here, the employee's claim is subject to the McDonnell Douglas framework provided by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). See Strickland, 239 F.3d at 1207. For a prima facie case of retaliation, the employee must show that "(1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." Id.

Plaintiff suffered an adverse employment decision through his termination. However, he fails to meet the other two elements. As discussed above, Plaintiff did not engage in statutorily protected activity. The leave he claimed under the FMLA

was not eligible for coverage. Further, because Plaintiff accumulated at least six tardies, none of which were covered by the FMLA, viewing the evidence in the light most beneficial to Plaintiff reveals that Defendant's decision to fire Plaintiff was based on his violation of the attendance policy and not any FMLA leave. Defendant is entitled to summary judgment on this claim.

### E. Plaintiff's Motion for Summary Judgment

Plaintiff's Motion for Summary Judgment in Opposition reads more like a response to Defendant's motion for summary judgment. (Doc. 37). Plaintiff "moves for summary judgment" but only "urges the court to deny Grede II, LLC's motion for summary judgment." Id. at 1. The Court found above that Defendant is entitled to summary judgment on all claims. To the extent that Plaintiff's motion can possibly be interpreted as one for summary judgment, the motion is denied.

### F. Defendant's Motion to Strike

Because Defendant's motion for summary judgment is due to be granted, even when considering the information proffered by Plaintiff that Defendant wants stricken, Defendant's motion to strike is moot.

### CONCLUSION

Defendant's motion for summary judgment is hereby **GRANTED**, Plaintiff's motion for summary judgment is **DENIED**, and Defendant's motion to strike is **DENIED AS MOOT**.

**DONE** and **ORDERED** this 28th day of January, 2016.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE